UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| CHRISTINE MASSENGALE,<br>JAMES MASSENGALE,<br><br>   Plaintiffs,<br><br>   v.<br><br>DYLAN INMAN,<br>ERICA ISON, and<br>STATE FARM MUTUAL AUTOMOBILE<br>INSURANCE COMPANY,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>) No. 4:19-cv-00244-DML-TWP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## Order on Motion for Summary Judgment

This case involves an automobile accident. On November 22, 2017, the day before Thanksgiving, defendant Dylan Inman, who was driving defendant Erica Ison's car and was under the influence of heroin, crashed her car into a car driven by plaintiff Christine Massengale. Ms. Massengale and her husband, who has brought a derivative loss of consortium claim, have sued: (a) Mr. Inman for negligence, (b) Ms. Ison for her own negligence in entrusting her car to Mr. Inman and for vicarious liability for Mr. Inman's negligence, and (c) the Massengales' own auto insurer, defendant State Farm Mutual Automobile Insurance Company, for underinsured or uninsured motorist coverage.

Before the court is a motion for summary judgment by Erica Ison on the Massengales' negligence and vicarious liability claims against her. State Farm filed

an opposition.[1] The Massengales filed their opposition, which adopted State Farm's filings. The court will set forth the summary judgment standard and describe the designated facts and reasonable inferences from them as viewed in favor of the non-movants, and then address whether a reasonable jury could, based on those facts and inferences, find Ms. Ison liable on the Massengales' claims.

## Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). Disputes about irrelevant facts do not matter; only factual disputes that might affect the outcome of the suit in light of the substantive law will prevent summary judgment. *Id.; JPM, Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir.1996). A genuine dispute as to a material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby,* 477 U.S. at 249. The party that bears the burden of proof on an issue may not rest on her pleadings, but must affirmatively demonstrate by designating specific facts on each essential element of her case "that

---

[1] The court rejects Ms. Ison's contention that State Farm lacks standing to oppose her motion for summary judgment. Its liability to its insureds, the Massengales, is affected by whether Ms. Ison could be liable to the plaintiffs and whether and the extent to which she has insurance coverage for any such liability.

there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

The court construes the evidence, and draws all reasonable inferences from the evidence, in the light most favorable to the nonmoving party. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). *Metropolitan Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002). "[I]f genuine doubts remain and a reasonable fact-finder could find for a party opposing the motion, summary judgment is inappropriate." *Olayan v. Holder*, 833 F.Supp.2d 1052, 1061 (S.D. Ind. 2011).

## Material Facts

The facts recited in this section are undisputed by the parties or reflect designated facts and inferences presented in the light most favorable to the non-moving parties, the Massengales and State Farm.

At the time of the accident on November 22, 2017, defendants Dylan Inman and Erica Ison lived together with their two-month old child.  The court will use their first names to aid the reader.  Erica and Dylan had begun dating in 2015 and moved into an apartment together in May 2017, in Sunman, Indiana. Each owned a vehicle.  Erica never drove Dylan's small truck because she did not like driving that type of vehicle.  Dylan sometimes drove Erica's car, both with and without her as a passenger, but mainly he drove his own vehicle.  He never drove Erica's car without Erica asking him to drive or without their agreement that Dylan could take her car.  Before they moved into the apartment together in May 2017, Erica knew that Dylan sometimes used heroin—"on and off" but not "all the time"—and that his contact for

3

getting drugs lived in Cincinnati, Ohio (which is about 40 miles from Sunman, Indiana).  Dylan continued to use heroin after they moved in together—at least a couple times a week and as much as every other day—but Dylan did not use heroin in Erica's presence.  She knew when he had used heroin because he would come home "acting crazy."  Dylan knew that Erica, who was not a drug user, disapproved of his drug use, and they sometimes argued about it.

On Wednesday morning, November 22, 2017 (the day before Thanksgiving), Dylan's truck would not start and both he and Erica needed to get to their places of work in Batesville, Indiana, a town about 10 miles northwest of their home. Because they expected Dylan's workday to end sooner than Erica's, Dylan drove Erica to work and then drove himself to work.  (At some point, their child was taken to Dylan's grandfather's house; they either took the baby on their way to Erica's workplace or Dylan drove the baby after dropping off Erica at her job.  It's not clear from the record, but it also is not material.)

Erica and Dylan discussed that morning that after Dylan's workday ended, he would drive to his grandfather's house (where their child was spending the day) and would wait there until Erica called him when she was ready to be picked up from work.  They did not have a landline at their Sunman home and Dylan did not have a cell phone at the time; Erica testified that the reason Dylan needed to go to his grandfather's house after work was so Erica could reach him by phone when she needed to be picked up.  She did not otherwise provide any instructions or make

demands about where Dylan could or could not drive her car that day.[2] When Erica's workday ended at 2:30 p.m. (apparently about the time she usually ended her workday, which began at 6:00 a.m.), she tried to reach Dylan by phone at the grandfather's house and was told Dylan was not there and had not been there. Erica then asked Dylan's mother for a ride (they worked together), and they drove to the grandfather's house; Dylan's mother then went home but returned later. Erica was not then worried about Dylan's safety or concerned that something had happened to him to have prevented him from going to the grandfather's house. But as the hours passed, she and Dylan's mother became worried that something bad may have happened; they did not, however, attempt to reach any of Dylan's friends or call the police. They waited, ate pizza, and watched television. At about 9:00 p.m. that evening, a hospital called Erica to tell her that Dylan had been in an accident.

The accident happened when Dylan was driving from Cincinnati to Indiana via I-74 west. He had obtained some heroin in Cincinnati, used it, and then on his

---

[2] Erica testified that she "specifically" said that the only places Dylan was allowed to drive her car was his place of work, then his grandfather's house after work, and then to Erica's place of work when she was ready to be picked up (*see* Ison Dep. Trans., Dkt. 40-1 at pp. 37-38). But a trier of fact reasonably could choose not to believe that testimony and instead believe—based on other testimony and reasonable inferences—that although Erica may have expected Dylan to go to the grandfather's house and wait for her call, she did not specifically forbid all other travel by him and was not overly concerned about getting a ride from Dylan. Erica and Dylan's mother worked at the same place and were friends before Erica even met Dylan. Erica got a ride after work with Dylan's mother to go to the grandfather's house and was not initially worried about Dylan's safety merely because he had not picked her up and was not at the grandfather's house.

way driving back to Indiana felt the drug "kicking in" and decided he should pull over to the shoulder. Dylan remembers trying to merge into the right lane before intending to pull over; the next thing he knew he was on a stretcher. He had hit Ms. Massengale's car. There is no evidence in the record on summary judgment about when Dylan drove to Cincinnati (only that it was sometime after he got off work, but that timing is not revealed), nor when he began his trip back to Indiana, nor when the accident occurred.

The court now analyzes whether there are any genuine issues of material fact that must be resolved by a jury.

## Analysis

I.   **The court will apply Indiana substantive law to the claims against Erica Ison.**

Erica asserts that Indiana substantive law applies to the two claims brought against her because they are based on actions and statements between Erica and Dylan that took place in Indiana. The defendants do not contest the applicability of Indiana substantive law, and they too rely on Indiana law. The court will thus apply Indiana substantive law to both claims against Erica. *See J.S.T. Corp. v. Foxconn Interconnect Technology Ltd.,* 965 F.3d 571, 577 n.1 (7th Cir. 2020) (When the parties do not raise a conflict of law issue, the court applies the law of the forum state.)[3]

---

[3]   The court's determination that Indiana law applies to the claims against Erica is not a determination that Indiana law applies to the plaintiffs' claims against Dylan or State Farm.

6

The court first addresses the negligent entrustment claim and then the plaintiffs' theory of vicarious liability.

**II.  There is insufficient evidence on which a reasonable jury could conclude that Erica knew Dylan was unfit to drive her car at the time she entrusted it to Dylan.**

A negligent entrustment claim under Indiana law requires the plaintiff to prove:

(1) an entrustment
(2) to an incapacitated person or one who is incapable of using due care,
(3) with actual and specific knowledge that the person is incapacitated or incapable of using due care at the time of the entrustment.

*Hardsaw v. Courtney,* 665 N.E.2d 603, 606 (Ind. Ct. App. 1996).

These elements have been applied in cases like this one where the plaintiffs contend that because the owner of a car knew that the driver to whom she entrusted her car was a substance abuser, a jury could conclude based on that information alone that the owner was negligent in entrusting the car to the substance abuser and liable to a third party who was injured by the abuser while he was intoxicated. Indiana's Supreme Court and Courts of Appeal have decided, however, that the owner's knowledge about the driver's susceptibility to substance abuse is—without more—not enough to meet an essential element of the claim. Instead, as the following cases have held, the owner must "have actual and immediate knowledge" at the time of entrustment that the driver is unfit to drive because of current intoxication.

*Fisher v. Fletcher,* 133 N.E. 834 (Ind. 1922), involved a chauffer for Fletcher, who owned the car the chauffer drove. The chauffer had permission from Fletcher

7

to use the car for his own purposes whenever he wanted after the end of his workday. The plaintiff, Fisher, was involved in an accident with the chauffer after the end of a workday, and he sued Fletcher for negligently entrusting his car to the chauffer. The plaintiff claimed that Fletcher knew that his chauffer "was in the habit of drinking intoxicating liquors to excess" and of doing so after the end of his workday, and that the chauffer was, in general, "a wild and reckless driver." *Id.* The court determined that these allegations were not sufficient to state a claim against the owner (Fletcher) for negligent entrustment because at the time the chauffer "was put in possession of the car," the chauffer was not intoxicated, "uninstructed or inexperienced" in driving the car, incapable of skillfully operating a car, or otherwise "incompetent" to use care in operating a car. *Id.* at 836.

A similar result was reached in *Ellsworth v. Ludwig,* 223 N.E.2d 764 (Ind. Ct. App. 1967), in which a woman sued her husband's employer for negligently entrusting the employer's truck to the husband. One day, the husband called the employer from a bar and asked for permission to drive the truck to his home; the employer gave that permission. When the husband reached his house, he drove into the front yard, ran over his wife who was sitting in the yard, and then crashed into his house. The court held, relying on the Indiana Supreme Court's decision in *Fisher,* that even though the husband had a reputation "for his ability to consume alcoholic beverages" and was "known" to drink even during working hours, the employer could not be liable unless it knew "at the very moment of the entrustment" that the husband was not fit to drive. *Id.* at 765-66. In *Sutton v.*

8

*Sanders,* 556 N.E.2d 1362 (Ind. Ct. App. 1990), the owner of the vehicle (Sutton), the driver (Purlee), and others, including the plaintiff, had spent the afternoon drinking beer together. While Sutton testified that he thought Purlee had not had that much to drink and "could drive," the court found that a jury must resolve the evidence about Sutton's knowledge of the extent of Purlee's intoxication at the time of entrustment. Thus, as did the courts in *Fisher* and *Ellsworth,* the *Sutton* court emphasized that the owner could be held liable for negligent entrustment only if he knew at the very time of the entrustment that the person to whom he entrusted his car was too intoxicated to be fit to drive. *Id.* at 1365. *See also Stocker v. Cataldi,* 489 N.E.2d 144 (1986) (mother who believed that her son was "irresponsible" and should not even have a driver's license not liable for negligent entrustment when she "had no actual knowledge of her son's intoxication on the day" she entrusted her car to him).

State Farm and the Massengales ignore these cases. They have not attempted to distinguish them or explain why the court should not apply them.

Instead, they rely on a case, *Hardsaw v. Courtney,* 665 N.E.2d 603 (Ind. Ct. App. 1996), where parents were found by a jury to be liable to a woman who was attacked by their dog, in part on a theory that they had negligently entrusted the care and control of the dog to their 12 year-old daughter, whose inability to control the dog proximately caused the woman's injuries. The circumstances of entrustment in *Hardsaw* are not analogous to those present here or in the other cases discussed above involving the entrustment of an automobile to a person at risk of intoxication

9

but not intoxicated at the time of entrustment.  In finding in favor of the injured woman, the court stated that the jury could have decided the 12-year-old was incapable of using due care and the parents knew of that incapacity *at the time of entrustment*—when they left the daughter in charge of the dog's care and control—because they knew that the dog was as large as the daughter, the daughter had had no experience supervising the dog, and they had left their daughter in charge without having provided any instructions about how to care for the dog or to control it.  *See id.* at 607.  Thus, at the very time of entrustment, the daughter was not capable of exercising due care.

Indiana law is clear that where the alleged lack of ability on the part of the person entrusted with a vehicle to exercise due care in driving it stems from a risk of *future* intoxication, as a matter of law that is not enough to establish an essential element of negligent entrustment.  While there are disputed facts about whether Erica should have known that Dylan was a risk of later becoming intoxicated because of his drug habit, there is no evidence that Dylan was under the influence of drugs at the time of the entrustment.  Erica is therefore entitled to summary judgment on the plaintiffs' negligent entrustment theory of liability.

The court now turns to the plaintiff's vicarious liability theory against Erica.

**III.    There is insufficient evidence on which a reasonable jury could determine that Dylan was acting as Erica's agent or employee at the time of the accident.**

The plaintiffs also allege that Erica is vicariously liable for Dylan's negligence in causing the accident.  But there is no evidence on summary judgment

10

on which a jury could reasonably find that Dylan was acting as Erica's agent or employee when he was driving on I-74 and crashed Erica's car into Mrs. Massengale's vehicle.

In the tort context, one can be held vicariously liable for the negligence of another based on *respondeat superior*. That theory requires a showing that the tortfeasor was the employee or servant of the person or entity alleged to be liable for his conduct. *Columbus Regional Hospital v. Amburgey,* 976 N.E.2d 709, 714 (Ind. Ct. App. 2012); *Green v. Perry,* 549 N.E.2d 385, 389 (Ind. Ct. App. 1990). *See also Southport Little League v. Vaughan,* 734 N.E.2d 261, 268 (Ind. Ct. App. 2000) (internal quotations and citations omitted) ("[A]n employer, who is not liable because of his own acts, can be held liable for the wrongful acts of his employee which are committed within the scope of employment.") Or, even if there is no agency-type relationship between owner and driver in the "exact legal sense of the term," a relationship of a similar nature may be sufficient to allow vicarious liability but only "if the driver was acting for the benefit and under the direction of the owner." *Sutton v. Sanders,* 556 N.E.2d 1362, 1365 (Ind. Ct. App. 1990).

No one suggests that Dylan was Erica's employee or servant in any traditional sense or her agent in an "exact legal sense of the term." Further, no matter how the evidence is viewed, a jury could not reasonably find Erica vicariously liable for Dylan's negligent driving. The evidence about Dylan's use of Erica's car can be viewed in two possible ways. First, a jury could believe that Erica had strictly forbidden Dylan from using her car to travel anywhere other than to his

11

workplace, then later to his grandfather's house, and later to Erica's workplace. Under that scenario, his use of Erica's car for anything else, including his travel to Cincinnati and back, must be viewed as wholly outside the permitted agency.

Second, a jury could believe that Erica had not placed strict limits on Dylan's use of her car, even if she had hoped and wanted him to pick her up from work—which never happened and was not an activity in which he was engaged at the time of the accident. Under this scenario, one must accept the evidence that Dylan's actual activities in using the car at or near the time of the accident were not in any way for Erica's benefit or under her direction. Erica was not in the car at the time with an ability to control what Dylan did. *See Sutton,* 556 N.E.2d at 1365 (noting that car owner's presence as a passenger can be sufficient to establish control necessary for vicarious liability). Dylan was not on an errand for Erica's benefit; in fact, he knew she would never have allowed him to use her car to go to Cincinnati and buy drugs. At best, Dylan had permission that day to use Erica's car as he saw fit, and Erica was not expected to exercise any control at all. As Erica has argued, State Farm and the Massengales cannot point to a single case that visits vicarious liability on a car owner merely by virtue of the owner's lending of her car to another person who then causes an accident.

For these reasons, the court finds that Erica is entitled to summary judgment on the Massengales' vicarious liability claim against her.

## Conclusion

For the foregoing reasons, defendant Erica Ison's motion for summary judgment (Dkt. 38) is GRANTED. The court will not enter a final judgment at this time because claims between the plaintiffs and State Farm remain to be decided, and the plaintiffs' damages against defendant Dylan Inman remain to be decided.

So ORDERED.

Dated: February 26, 2021

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

Via United States mail:
**DYLAN INMAN**
4648 Firehouse Road
Batesville, IN  47006